**Lewis Ross Miller et al., Trustees, et al., Appellees, v. J. Marcus Miller, Appellant.**

1. WILLS, § 61*—*when not uncertain.* Will construed as certain, definite, capable of being enforced and valid, and not as uncertain and invalid because of the fact that all of the interest of the children of a designated son might be consumed by the son as a result of payments made to him for his support during his incapacity or sickness as provided for in the will.

2. WILLS, § 434*—*costs in actions to construe.* Costs occasioned in construing a part of a will should be taxed against the undivided portion of a trust fund in which one beneficiary is interested, where the other beneficiaries have no interest in the construction of the particular provisions involved.

Appeal from the Circuit Court of McDonough county; the Hon. HARRY M. WAGGONER, Judge, presiding. Heard in this court at the October term, 1914. Affirmed. Opinion filed April 16, 1915.

ELTING & HAINLINE, for appellant.

FLACK & LAWYER, VOSE & CREEL, CHARLES H. BURTON and T. J. SPARKS, for appellees.

MR. PRESIDING JUSTICE ELDREDGE delivered the opinion of the court.

This is an appeal from the decree of the Circuit Court construing the bill of John W. Miller, who died

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

October 6, 1908. The testator left surviving him, Dilcy C. Miller, his widow, Lewis Ross Miller, William Price Miller, Mary E. Greenup, Jenarie M. Cassidy and J. Marcus Miller, his children. Ward Miller, Louisa Norris, Walter Miller, Vance Miller, Grace Miller Bauer, Orville Miller, James Marcus Miller, Jr., and Nellie Miller are the children of appellant, J. Marcus Miller. The bill was filed by the executors and trustees named under the will to construe the fourth and sixth clauses thereof.

The fourth and sixth clauses of the will are as follows:

"Fourth: I have already given to my son, Lewis Ross Miller, the sum of $500.00; to Mary E. Greenup, $700.00; to Jenarie M. Cassidy, $700.00; to William Price Miller, $500.00, and to J. Marcus Miller, $1,015.97, which said amounts were given to them as advancements, and which said amounts shall be charged against them so that the said children may be equal before any division is made of any personal property, or the proceeds of any real estate, and I direct that my executors, as soon after my decease as practicable, pay to said children a sufficient sum to make them equal, and that the balance of my estate be divided equally among my said five children, William Price Miller, Lewis Ross Miller, James Marcus Miller, Mary Ellen Greenup and Jenarie M. Cassidy, the undivided one-fifth interest in and to the proceeds of my estate which remains after deducting the debts, funeral expenses, widow's bequest and the equalization, above mentioned, to be paid to them, as hereinafter provided, except that portion devised to my said son, J. Marcus Miller, which said one-fifth interest, so devised and bequeathed to my said son, J. Marcus Miller, shall be held by my executors, hereinafter named, during the lifetime of the said J. Marcus Miller, but in case he should become unable to support himself, then the said executors shall use such portion of his interest in said estate as shall be necessary for his support during said incapacity or sickness, and at his death, said executors

shall divide the remainder of the portion, so belonging to my said son, J. Marcus Miller, equally among his children, as they become of lawful age.''

"Sixth. I give, devise and bequeath to Dilcy C. Miller, William Price Miller, Lewis Ross Miller and Albert Greenup, my executors, hereinafter named and appointed, all my real and personal property and estate of whatsoever kind and nature, in trust for the execution of this will. I give to them, or the survivor of them, full power and authority to dispose of same, at public or private sale, at such time and place and upon such terms and in such manner as to them shall seem proper. And I will and ordain that my said executors, hereinafter named, shall allow and permit my said son, William Price Miller, to have the use of the farm that he is now farming as long as his mother lives, if he desires to stay, on the same terms that he now rents the same, to-wit: one-half of everything raised on the farm and one-half interest in the stock and farming implements on the farm, my said executors to pay the taxes on the land, and the said executors to pay one-half of the personal taxes, and my said son the remaining one-half, and at the death of my said wife that said executors at once sell all of said property, either at public or private sale, as to them shall seem best for said estate, and I do hereby give full power and authority to my said executors, or the survivors, to grant, bargain, sell and convey, all of said land above described, and that from the proceeds thereof said executors shall pay to my said children, to each, the undivided one-fifth part thereof, at the time of said sale, to hold in fee simple forever, except the interest of the said J. Marcus Miller, which shall be held as above provided.''

J. Marcus Miller filed a third amended cross-bill praying that the fourth clause be construed to give him an undivided one-fifth interest of said estate absolutely on the ground that the trust attempted to be asserted is uncertain, indefinite, incapable of being enforced, and void; that the intention of the testator

is that the body of the trust, attempted to be created for the benefit of his children, may be used by him in his lifetime and that by reason thereof it is uncertain that there will be any remainder of said trust fund at his death, for which reason the attempted trust is incapable of being enforced.

The decree finds that the fourth clause is clear and unambiguous, and creates a trust whereby the one-fifth part of said estate shall be held in trust by the executors of the will as trustees during the life of J. Marcus Miller, unless he shall become unable to support himself, in which event the said executors shall use such portions of said trust as shall be necessary for his support during such incapacity or sickness only, and at his death the remainder of said trust fund shall be divided equally among his children; that no part of said one-fifth interest so held in trust shall be paid to said J. Marcus Miller in fee, but only such amounts shall be paid to him during his incapacity and sickness as shall be necessary for his support during such time, and that he is not entitled to the income of said trust fund during his lifetime.

Appellant relies upon the cases of *Mills v. Newberry,* 112 Ill. 123, and *Wilce v. Van Anden,* 248 Ill. 358, to sustain his position. While it is true that the language used in those cases might imply that such a distribution of property, on account of the uncertainty as to whether there would be any part of the trust fund remaining at the time of the death of the legatee, is void, yet in the later case of *Burke v. Burke,* 259 Ill. 262, both these cases were very thoroughly analyzed and it was held:

"The proposition upon which *Mills v. Newberry* was decided (and the same applies to *Wilce v. Van Anden*), was, not that the possible exhaustion of the fund by its application to prior demands upon it before its application to the purposes of the trust renders the subject-matter of the trust uncertain, but that there is no fund

which can be the subject-matter of a trust where its application to the purposes of the trust depends upon the absolute and unconditional discretion of the person in control of the fund. In such case there is nothing which a court of equity can lay hold of,—nothing binding on the conscience. The chancellor cannot direct what disposition one shall make of property which is given to him to dispose of as he chooses. This was the character of both the cases cited and of the authorities on which the opinions in those cases rely. Wherever a clear discretion or choice to act or not to act is given; wherever the prior dispositions of the property import absolute and uncontrollable' ownership; wherever the trustees have an option to withdraw the funds from the purposes of the trust and apply them in their own discretion, the court cannot execute such a trust. This was the character of both the cases cited. The rule laid down in them goes to this extent and no farther and is amply sustained by the numerous authorities cited.''

The present case is unlike either the case of *Mills v. Newberry* or *Wilce v. Anden, supra,* because the prior disposition of the property does not import an absolute and uncontrollable ownership, nor have the trustees an option to withdraw the funds from the purposes of the trust and apply them in their discretion. Every purpose under the trust created is certain and unambiguous.

In the *Burke* case, *supra,* the fifth and sixth provisions of the will there under consideration, devised and bequeathed unto the wife of the testator the lands and income from all the real estate so long as she might live, she to have the right to occupy or lease the same, but in case at any time she should deem it necessary to sell the same or any part thereof, in order to supply herself with the comforts and necessities of life, she was given full power so to do and convey the same as her own, and provided that upon her death the real estate remaining be sold and $500 of the proceeds be given to St. Mary's Catholic parish of Sterling to be

used for the perpetual care of a burial lot, and the balance to be given to said parish for the erection or support of a school to be erected or maintained in said city. The contention was made in that case, as in this, that the devise to the parish for the erection and support of a school depended upon such an uncertain event as to whether there would be any property remaining upon the death of the widow, that it was void for that reason. The court held in passing upon this question:

"There is no uncertainty about the subject-matter of the trust. It is all the real estate of the testator after the termination of the life estate of Margaret Burke, his widow. The whole estate may be defeated by the exercise of the power of Mrs. Burke in accordance with its conditions, but the estate is a vested estate in remainder, and a court of equity can and will protect the estate, if necessary, and enforce the trust."

In that case, also, the remaining real estate was directed to be sold and the proceeds thereof given to the parish, and it was held that it was a gift of personal property. We can see no distinction between the facts controlling the principle of law announced in the *Burke* case and the facts in this case. In this case there is an ultimate possibility that the trust fund may become exhausted and that the children of appellant may thereby take nothing under the will, but their interest in the trust fund is vested, subject to be defeated only by the contingency that it be exhausted in the support of appellant through his incapacity or illness, and is a trust which the court will protect.

There is no direction in the will to the trustees to pay the income of the trust fund to appellant. The will does not even provide that this trust fund shall be invested or that any income shall be accumulated. The intention of the testator as expressed by the will in our opinion is clear and unambiguous and the decree is correct in its construction thereof.

The only other error presented is that the decree provides that the costs occasioned in construing the will be taxed against that undivided one-fifth portion of the estate representing the trust fund in question, whereas it is claimed they should have been taxed against the whole estate. The case of *Arnold v. Alden,* 173 Ill. 229, is cited as sustaining this contention. In our opinion it does not so hold. In that case the fourth clause of the will created a trust for certain purposes and a bill was filed for a construction thereof. By the terms of the decree, the fee of the guardian *ad litem* was charged against the fund belonging to some of the minor legatees, and the court directed that all the costs, including the fee of the guardian *ad litem,* be paid out of the trust fund of the estate. We see no equitable reason why the other beneficiaries under this will, who have no interest in the construction of the particular part of the will here involved, should be made to bear a portion of the expense thereof. The decree is affirmed.

*Affirmed.*