[No. 1-39761-2.    Division Two.    October 10, 1969.]

MARION C. EDWARDS, *Individually and as Guardian, et al.,* Appellants, v. LEON R. EDWARDS, *Individually and as Executor, et al., Respondents.*

*Robbins, Felix & Robbins* and *Thomas J. Kraft,* for appellants.

*Willis C. Oldfield,* for respondents.

PEARSON, J.—Plaintiff appeals from a dismissal of a declaratory judgment action in which he sought to invalidate the trust provision of the last will and testament of Lonnie Leota Edwards, deceased.

The facts were not disputed. The matter was brought to issue by plaintiff's motion for summary judgment. Both counsel agreed that only issues of law were involved.

Lonnie Leota Edwards died testate in Tacoma, Washington on February 26, 1963. Her husband, Leon R. Edwards, was appointed executor of her estate. Paragraphs 3 and 4 of her will, which are here under attack, provided:

> I give, devise and bequeath to my husband, Leon R. Edwards, a life estate in all the rest, residue and remainder of my estate, subject to the conditions and limitations set forth herein, of every kind, nature and description and wheresoever situated, or which I may die seized, for his own use during his life without bond and without liability for impeachment for waste, provided, however, that in the event he is unwilling or physically unable to manage and administer said estate, then and in that event it is my desire and intent that all of my estate then in his possession shall be placed in trust with the Puget Sound National Bank . . .

> In the event my husband, Leon R. Edwards, should perish with me in a common disaster or as the result of a common disaster or should die within six months following my death, or upon the subsequent death of my husband, I give, devise and bequeath all the rest, residue and remainder of my estate not specifically devised herein to the PUGET SOUND NATIONAL BANK, Tacoma, Washington, TRUST DEPARTMENT, to be held in trust for the benefit of my grandchildren, SHARON EDWARDS KNAPP, St. Helens, Oregon, GRETCHEN EDWARDS, JANE EDWARDS, and WENDY SUE EDWARDS, of Bellevue, Washington, and my son, MARION C. EDWARDS, for the following uses and purposes and upon the following terms and conditions.

The plaintiff, Marion C. Edwards, is the son of the deceased, Lonnie Leota Edwards, and brought this action individually and as guardian ad litem for his children, all of whom are beneficiaries of the aforementioned trust. The named defendants were Leon R. Edwards, individually and as executor, and the Puget Sound National Bank, named trustee in the will.

Plaintiff claims that no valid trust was created by the provisions of this will because the trust would not come into existence until the life tenant died or became "unwilling or physically unable to manage and administer [the] estate."

Plaintiff asserts that a trust is not and cannot be created without the actual transfer of legal title to the trustee as of the date of death of the trustor. He seeks to have the trust provisions invalidated, so that the remainder after the life estate passes by intestacy.

The trial court denied this relief, upheld the trust, dismissed the action, and allowed both defendants' costs and attorney's fees.

To simplify the first legal problem presented by the appeal, we state the issue: Where A devises her estate to B for life, with power to consume and at his death the remainder to C in trust for D, is a valid trust of that remainder established?

Plaintiff contends that it is invalid because (1) title to the remainder does not reach the trustee at the time of testator's death but is postponed until the intermediate estate terminates, and (2) the power to consume in the life tenant and the words, "all of my estate then in his possession" makes the trust res so uncertain and indefinite as to render the trust invalid.

To understand the first contention is to reject it. We are told, in effect, that if testator had used these words: *To C in trust for D, subject to a life estate in B,* the trust would stand, but because she used these words: *To B for life and at his death to C in trust for D,* the trust is invalid.

We are told that the reason for this distinction is that in the former case legal title reposes immediately in the trustee while in the latter it awaits the termination of the intermediate estate. Thus, testator has not made a present and unequivocal disposition of both legal and equitable ownership at her death, which is one of the requirements of an express trust.

The rule relied upon by plaintiff is stated in 54 Am. Jur. *Trusts* § 34 (1966) at 45:

It is essential to the creation of an express trust that the settlor presently and unequivocally make a disposition of property by which he divests himself of the full legal and equitable ownership thereof. He may make himself the trustee or one of the trustees, thus retaining the legal title in whole or part, or by making himself the beneficiary or one of the beneficiaries of the trust, he may retain the equitable ownership in whole or part, but he cannot retain the full legal and equitable ownership. The legal title must be definitely reposed in the trustee, whether he is the trustor or another. Such present and unequivocal disposition of the property in trust must constitute an actual carrying out and execution of the settlor's intention to create a trust by some proper transaction or mode, and it does not suffice to create a trust that he merely intends or manifests an intention to create a trust in the future or conditionally directs or gratuitiously promises a disposition of property in trust in the future.

■ This rule and the cases cited as authority for it involve inter vivos trusts. The issue in many of them was whether or not the trust should fail as an attempted testamentary disposition, without compliance with the statute of wills. Others were cases where the settlor had declared a trust but had conveyed no property to the trustee on which a trust could operate. A testamentary trust is distinguishable. Such a trust looks to the future and does not, as of the time of its execution, divest the trustor of his property or any interest therein or vest a present property interest in the beneficiaries. *Johnson v. Weldy*, 79 N.D. 80, 54 N.W.2d 829 (1952).

We believe that plaintiff's attempted application of that rule to a testamentary trust and to the trust in question is erroneous.

Assuming arguendo that a valid testamentary trust must *at death* divest the trustor of full "legal and equitable ownership," it is our view that testatrix intended to and did accomplish that end in this case. To ascertain the type of interests which came into being at her death, we look to the law of future interests.

In the case of *In re Estate of Gochnour,* 192 Wash. 92, 93, 72 P.2d 1027 (1937) the will under consideration provided:

> "I give, devise and bequeath all my property, owned by me at the time of my death, both real and personal . . . to my husband, Jacob B. Gochnour, . . . with full power to alienate the same for his use and benefit during his natural life, and I direct that at the death of my said husband, Jacob B. Gochnour, all of my said property, real and personal, or the proceeds thereof, then remaining, go and be distributed to my nieces and sister . . ."

At 93, the court stated:

> By the terms of the will, under the great weight of authority, Jacob B. Gochnour takes a life estate, with vested remainder to the decedent's sister and nieces, notwithstanding his absolute power of disposal during his lifetime.

Admittedly the remainder given in that case was not placed in trust. However, the interest created in the remaindermen is identical with the interest placed in trust in the case at bar. Accordingly, we hold that testatrix created a life estate and a future interest denominated a vested remainder, both interests of which came into being at the time of her death.

In *Shufeldt v. Shufeldt,* 130 Wash. 253, 227 P. 6 (1924) at 262 the court stated:

> If the postponement of the payment of the legacy or the enjoyment of the devise is for the purpose of letting in intermediate estates only, then the remainder shall be deemed vested at the death of the testator and the lega-

tees and devisees are to be determined as of that date, for under those circumstances no futurity is annexed to the substance of the conveyance, but only to the time of its enjoyment.

This interpretation is consistent with Restatement (Second) Trusts § 77 (1959), where illustration 4, at 198 provides:

4. A, the owner of Blackacre, transfers Blackacre to B for life, remainder to C and his heirs and directs that C hold his interest in trust for D. C holds a vested remainder in trust for D.

Plaintiff next contends that the trust should fail because the trust res is too indefinite and uncertain.

■ The creation of a valid testamentary trust requires (1) the intention by the testator by will to create a trust, (2) designation of the trust property, and (3) the designation of beneficiaries, and the terms on which the trust is to operate.

Plaintiff contends that the second element of a valid trust is not satisfied because the term "all of my estate then in his [Leon R. Edwards'] possession" is too uncertain a designation of the trust res. Furthermore, where there is no "liability for impeachment for waste" it is uncertain that there will ever be a trust estate. Therefore, the trust should be held invalid. We reject this argument.

■ 1 G. Bogert, Trusts and Trustees § 112 (2d ed. 1965) at 571 describes the following as proper subject matter of trust estates:

The trust property may consist of an interest which is absolutely vested, or one which is vested but subject to being divested, as in the case of gifts on condition subsequent or determinable interests. It may be a contingent interest which is not to vest until the happening of a condition precedent or is uncertain as to the person to take.

The res may be a present estate or interest, or one entitling the trustee to possession and enjoyment at a future date, as in the case of reversions and remainders.

On this point, we find in 1 A. Scott on Trusts § 74.1 (3d 1967) at 679:

> Whatever may be the subject of an executed gift may be given in trust; and a person can declare himself trustee of whatever he can give to another in trust. Whatever interest he can devise or bequeath, he can devise or bequeath in trust.

*See also United States Trust Co. of N.Y. v. Commissioner,* 296 U.S. 481, 80 L. Ed. 340, 56 S. Ct. 329 (1936).

Again, in Scott on Trusts, *supra,* § 76 at 685:

> A trust can be created although the parties do not know precisely what the subject of the trust is, if it can be ascertained from circumstances existing at the time of the creation of the trust. Thus a trust created by will of the residue of the testator's estate is of course valid although the amount of the residue cannot be ascertained until the amount of his assets and of his liabilities has been determined.

Speaking of the uncertainty created by the power to consume by a life beneficiary, Scott states:

> A trust does not fail for uncertainty of the subject matter even though the life beneficiary is entitled to receive so much of the principal as he may demand and it is therefore uncertain how much will be left for the remainderman.

Scott on Trusts, *supra,* § 76, at 686.

Restatement (Second) Trusts § 77 (1959) at 197, 198 provides:

> An interest in a thing may be held in trust although the interest is not the complete property in the thing. . . .
> c. *Future interests.* The interest may be a future interest either vested or contingent. . . . The interest may be contingent as to its extent.

Plaintiff relies on *Wilce v. Van Anden,* 248 Ill. 358, 360, 94 N.E. 42 (1911). In that case the "entire part or portion of my estate remaining after the death or re-marriage of my said wife . . . " was placed in trust. The court appar-

ently held that the power to consume by the wife (life tenant) rendered the bequest void for uncertainty as to subject matter.

However, we note that two later Illinois cases, if not expressly overruling that decision, did so by implication. In *Burke v. Burke,* 259 Ill. 262, 267, 102 N.E. 293 (1913) the wife was given a life estate with the power to sell any of the estate in order to supply her comforts and necessities. The remainder over was placed in trust. In upholding the validity of that trust, the court distinguished the *Wilce* case by commenting that it was not the uncertainty created by the power to consume which rendered the trust void, but another provision of the trust which placed discretion in the trustees "to give to the brothers and sisters of the testator such portion of the trust fund as they might think best and devote the rest to charity."

The same distinction is made in *Dean v. Northern Trust Co.,* 266 Ill. 205, 107 N.E. 186 (1914) where the court upheld the validity of a trust of a remainder following a life estate with power to consume in the life tenant.

The case of *Burke, supra,* gives the rationale which we believe should control the case before us, at 268:

> Every kind of vested right which the law recognizes as valuable may be transferred in trust. (Perry on Trusts, secs. 67, 68.) The law is well settled that an estate may be given to a person for life with power to sell and convey the fee, and that a remainder may in such case be limited in fee after the termination of the life estate. . . . A remainder so limited is vested though subject to be defeated by the exercise of the power by the life tenant. The uncertainty as to the amount of the reduction because of the disposition of the estate, or a part of it, for the comfort or necessities of the life tenant, and the consequent uncertainty as to the amount of the estate which may be undisposed of, does not render the remainder contingent.

We consider this rule applicable to the case at bar.

This precise issue has not been decided by the Supreme Court of this state. We believe, however, that our determi-

nation of the validity of the trust is consistent with previously enunciated principles of future interest in property. *In re Estate of Gochnour.*

In the case of *In re Estate of Ivy,* 4 Wn.2d 1, 3, 101 P.2d 1074 (1940) the court was also faced with a community estate placed in trust for the surviving spouse with the power to consume. as much of the corpus as "the trustors saw fit to withdraw" together with the right to amend or revoke the trust agreement. Upon the death of the survivor, the estate was to be distributed to the remaindermen. Subsequent to the husband's death, the surviving trustor amended the trust by eliminating the remaindermen and making herself the sole beneficiary of the trust.

In determining that the power to consume and revoke did not change the character of the remainder so as to save the remaindermen from the inheritance tax laws, the court stated at 8:

> While there is confusion among the authorities in drawing a distinction between a vested remainder and a contingent remainder, the rule is settled in this state that a life estate, with the right to invade the principal, and remainder over, creates a vested remainder and not a contingent remainder.

While it is not essential to characterize the type of estates created by testator's will, it seems clear that she created a life estate in her husband of all of her estate with the power to consume and the remainder to the Puget Sound National Bank in trust for her son and grandchildren.

Under the rationale of the foregoing decisions, she granted to the trustee a vested remainder, notwithstanding the power to consume. *Shufeldt v. Shufeldt, supra; In re Estate of Ivy.*

We believe that such a future interest is and should be the proper subject matter of a testamentary trust.

In considering instruments creating trusts, the sole object of the courts is to ascertain the purpose of the settlor and to effectuate the purpose insofar as it is consistent with

rules of law. *Old Nat'l Bank & Union Trust Co. v. Hughes,* 16 Wn.2d 584, 134 P.2d 63 (1943); *Seattle First Nat'l Bank v. Crosby,* 42 Wn.2d 234, 254 P.2d 732 (1953).

▮ In the case at bar, the intentions of the testator are clear. To declare an intestacy under these circumstances solely because the extent of the trust res is uncertain is in our judgment unsound. It may be that no assets will be available to make the trust operative. We do not deem this obstacle of sufficient importance that we should frustrate the testator's intention as to the remainder, if any, by declaring an intestacy. The presumption against intestacy is particularly strong where the subject of the gift is the residuary estate. *In re Estate of Quick,* 33 Wn.2d 568, 206 P.2d 489 (1949).

Plaintiff also seeks to have the trust invalidated by urging that several of its provisions relating to the administration and distribution are vague and ambiguous. We have reviewed the will in its entirety and agree with the defendant executor that the terms of the trust are workable. In any event, if the trustee finds it necessary, it may at any time apply to the court for assistance. *Old Nat'l Bank & Union Trust Co. v. Hughes, supra.*

Plaintiff also complains of the award of $150 as attorney's fees to the defendant, Puget Sound National Bank, but does not complain of the award in favor of the executor. We believe the award to the defendant bank was within the discretion of the trial court. This case was in the nature of a will contest.

RCW 11.24.050 provides that reasonable attorney's fees may be assessed against the contestant where the will is upheld, unless the contestant acted with probable cause and in good faith.

The trial court undoubtedly reasoned that since the defendant, Puget Sound National Bank, had not accepted its trust duties, and would not be required to do so until the intermediate estate terminated, it was not a necessary party to the litigation. Consequently, the plaintiff did not

act with probable cause and in good faith in its action against the bank. We are unable to say that the trial court abused its discretion in awarding attorney's fees under these circumstances.

Accordingly, the judgment of the trial court is affirmed, with costs on appeal awarded to respondent.

ARMSTRONG, C. J., and PETRIE, J., concur.