[No. 4397–5–III.   Division Three.   June 8, 1982.]

*In the Matter of the Estate of* ALICE B. TAYLOR,
JOHN W. NEILANDS, *as Executor, Respondent,*
GENE R. TAYLOR, *Appellant.*

*Thomas A. Gish* and *Powers & Therrien, P.S.,* for appellant.

*Gary J. Libey* and *Nuxoll, McBride & Libey,* for respondent.

MUNSON, J.—Gene Taylor appeals a decision fixing the distribution of assets in the estate of Alice B. Taylor, deceased. The trial court, relying on RCW 11.12.170 and *Reeves v. School Dist. 59,* 24 Wash. 282, 64 P. 752 (1901),

found a fee simple estate in Alice Taylor, which she could devise to her son, John Neilands. We reverse and remand for distribution of the estate consistent with this opinion.

Ransom Taylor drafted his own will on a partially printed form. The nonintervention will named his wife, Alice, as executrix, without naming an alternate. Then in a space on the form, was partly typed and partly handwritten:

Third, I give and bequeath unto Alice B. Taylor (wife) all my earthly goods to have and to hold as she feels fit. If she sells property she shall give ($2,000.00) Two Thousand Dollars to my son, Gene R. Taylor, and to my step-son, John W. Neilands, Two Thousand Dollars ($2,000.00), and, in case of her death, what is left of property or money is to be divided equally between Gene R. Taylor and John W. Neilands.

Ransom died in 1966. Alice, as executrix, filed a certificate of completion, which stated: "said estate has been distributed in accordance with the terms of the will." The primary asset of the estate was community real property worth at that time $30,000, which Alice later sold for $100,000. At the time of sale, Alice paid John and Gene $2,000 each. But, when Alice, by her will, left only $1 to Gene and all the community property to John at her death, Gene commenced suit. He contends Alice received a life estate with a gift over in equal amounts to Gene and John. John contends, on the other hand, that Alice took a fee simple in the property. If John is correct, he will receive all of Ransom's property through Alice's will. If not, Gene will receive half of Ransom's share of his community estate by operation of Ransom's will.

The paramount goal of a court in construing a will is to ascertain and give effect to the testator's intended scheme of distribution, which must be determined largely from the language of the will itself. *In re Estate of Griffen,* 86 Wn.2d 223, 543 P.2d 245 (1975); *In re Estate of Vance,* 11 Wn. App. 375, 522 P.2d 1172 (1974).

Ransom's testamentary scheme, although difficult to fit

into common law patterns, is nonetheless clear. Alice was to have his property, and could do anything she wanted with it during her life. However, there were two limitations; (1) if she sold the property during her lifetime, she had to pay Gene and John $2,000 each; and (2) if at her death any property or its remaining proceeds were unconsumed, they were to be divided equally between Ransom's son, Gene, and stepson, John.

Ransom's attempt to both give his wife an unlimited estate and insure that John and Gene divided the unconsumed property was impossible under common law.[1] However, many modern cases have modified common law limitations in favor of carrying out the testamentary desires of the deceased.

We first note that Ransom made an obvious attempt to give Alice an estate over which she had almost total control. It is equally obvious that Ransom attempted to limit that estate, with a payment to John and Gene upon sale of property and a gift over to John and Gene upon Alice's death, if she had not disposed of the entire proceeds of his estate. Although based upon different contingencies, similar estates have been denominated a contingent fee. *See Nellis v. Nellis,* 99 N.Y. 505, 3 N.E. 59 (1885); *Buel v. Southwick,* 70 N.Y. 581 (1877). *See generally* T. Atkinson, *Wills* § 146 (2d ed. 1953). Other courts have found similar estates to be life estates coupled with unlimited inter vivos powers of disposition over the estate res. *In re Estate of Gochnour,* 192 Wash. 92, 72 P.2d 1027 (1937). Here, either construction would have the same effect since Alice died without consuming the entire estate.

This court should construe the will to give effect to every part thereof. In this case, we must find both an estate in Alice and a gift over to John and Gene. *See In re Estate of Thomas,* 17 Wn.2d 674, 136 P.2d 1017, 147 A.L.R. 598 (1943).

---

[1] It would be most simple to accomplish this goal using modern tools of trusts and powers of appointment.

Finally, in reconciling two apparently inconsistent will provisions, precedence should be given to the more clearly granted provision. *In re Estate of Thomas, supra.* The language in Ransom's will purporting to create a fee in Alice is somewhat vague—it does not contain language of inheritance, which is admittedly not required.[2] But the two contingent gifts over to John and Gene are completely clear; as between the two, the nature of the estate granted Alice is limited, uncertain and subject to construction, while the nature of the estate granted John and Gene is certain.

We also note that Alice, who presumably best knew Ransom, acceded to his testamentary desires and paid John and Gene $2,000 each when she sold the property. This act would be inconsistent with her continuing to hold a fee.

■ John argues a fee simple estate in Alice was created by Ransom's will, citing *Reeves v. School Dist. 59, supra,* and cited with approval in *In re Estate of Gulstine,* 166 Wash. 325, 6 P.2d 628 (1932). We question the current validity of *Reeves.* That case was factually dissimilar in that the intent to limit the initial gift was not as clear as in the Taylor will.[3] *Reeves* was written when the only alternative to a fee was a life estate, a drastic difference, so the decision embodies a considerable reluctance to limit the initial gift. But in *In re Estate of Gochnour, supra,* that problem was overcome by the holding that the initial gift could be a life estate with an unlimited power to dispose of

---

[2]RCW 64.04.060 eliminates the need for such words, but is itself a rule of construction:

"The term 'heirs', or other technical words of inheritance, shall not be necessary to create and convey an estate in fee simple. All conveyances heretofore made omitting the word 'heirs', or other technical words of inheritance, but not limiting the estate conveyed, are hereby validated as and are declared to be conveyances of an estate in fee simple."

[3](1) Taylor named his wife executrix but named no alternate, evidencing his assumption he would predecease her. (2) *Reeves* involved placement of funds in trust for a "cripple [*sic*] son" which may have given rise to the testator's fear the son would predecease him. *Reeves* should be limited to its facts. (3) Here there are two limitations on the fee, not just one; the first being the $2,000 payments and the second being the gift at Alice's death.

the res, and yet there could be a gift over—a vested remainder—to others. Given the *Gochnour* holding, we believe the court need not be as reluctant to find a limit on the initial gift, even though the initial gift may retain the attribute of an unlimited power of disposition. This allows the court to avoid the strained interpretation of *Reeves* and makes sense of the attempt to limit the initial gift. So in essence, we suggest that under *Gochnour* and its progeny, *In re Estate of Bolstad,* 200 Wash. 30, 35, 93 P.2d 726 (1939); *In re Estate of Ivy,* 4 Wn.2d 1, 6, 101 P.2d 1074 (1940); and *Edwards v. Edwards,* 1 Wn. App. 67, 71, 459 P.2d 422 (1969), limitations which could not be recognized as "clear" under *Reeves* now can be considered "clear" and given effect.[4]

Furthermore, *Reeves* has not been cited as authority since 1932, while *Gochnour* has more recent support; *Reeves* is of limited modern applicability. As noted by T. Atkinson, *Wills* § 146, at 808 (2d ed. 1953): "no will has a brother, especially a twin, and . . . we should not construe one man's nonsense by another man's nonsense."

To summarize our holding, Ransom granted an estate to his wife, and very clearly attempted to limit that estate by two mechanisms, one contingent upon sale of the property, the other limitation contingent upon Alice's death without disposing of the estate or its proceeds. Alice acted in recognition of Ransom's intent, fulfilling the first limiting mechanism and paying $2,000 each to John and Gene when she sold the property.

Therefore, we find Ransom's will created a gift over to John and Gene, equally, upon the death of Alice, without

---

[4]RCW 11.12.170 states:

"Every devise of land in any will shall be construed to convey all the estate of the devisor therein which he could lawfully devise, unless it shall clearly appear by the will that he intended to convey a less estate."

We believe this statute, like the *Reeves* decision based upon it, is inapposite since it is clear Ransom intended to convey a lesser estate.

RCW 64.04.060 eliminates the requirement for technical words of inheritance, such as "heirs", to convey a fee. However, for the statute to apply, there must be no words "limiting the estate conveyed," which is the case here.

her having disposed of the property. All property traceable to Ransom's share of the community estate should be distributed accordingly.

Reversed and remanded for proceedings consistent with this opinion.

MCINTURFF, C.J., and ROE, J., concur.